■ In the Matter of AZMI ABDELMESSIH, Petitioner, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent. [613 NYS2d 971] —Peters, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Education Law § 6510-a [former (4)]) to review a determination of the Commissioner of Education which revoked petitioner's license to practice medicine in New York.

In July 1991, a Hearing Committee on Professional Conduct of the State Board for Professional Medical Conduct (hereinafter the Committee) was convened pursuant to Public Health Law § 230 to review 11 specifications alleging professional misconduct on the part of petitioner, a physician who specialized in obstetrics and gynecology in Broome County. Petitioner was charged with two specifications of willfully filing a false report, four of fraudulent practice, one of negligence on more

than one occasion and four of moral unfitness involving four of petitioner's patients (hereinafter referred to as patients A, B, C and D).

Concerning the charges of willfully filing a false report, petitioner admitted that he had failed to disclose on his applications for affiliation privileges at two hospitals in this State, that he had held residency and staff appointments at Ohio Valley Medical Center in West Virginia, and that his privileges thereat had been suspended and later revoked due to complaints of sexual and verbal harassment made by 15 hospital staff members. Although that revocation was subsequently overturned by court order, his suspension was reinstated. Petitioner testified that he failed to disclose this information because of his desire to put the unpleasantness of the situation behind him and "start a new life" in New York. He further proffered to the Committee a letter from his West Virginia attorney whereby petitioner was advised that since he had prevailed in his challenge to the revocation of his license, he would be permitted to answer "no" to a question asking whether his privileges had ever been legally revoked. Moreover, notwithstanding the fact that petitioner was twice named as a defendant in professional liability actions, his West Virginia attorney further advised him that he did not have to disclose such facts on these applications since he had previously disclosed this information to the county medical society when securing medical malpractice insurance.

In August 1991, the Committee rendered a determination which sustained eight of the 11 specifications of professional misconduct. It found petitioner guilty of willfully filing a false report and of fraud based on the false information provided by petitioner on his applications. It declined, however, to find petitioner guilty of moral unfitness. The Committee further found petitioner guilty of the specifications alleging negligence on more than one occasion due to an unnecessary dilatation and curettage performed on patient A without obtaining her consent, on petitioner's failure to monitor patient B's pregnancy with ultrasound examinations, his failure to inform patient B that he did not have hospital admitting privileges, and his failure to order an ultrasound examination for patient C and give her instructions to go immediately to the hospital when she had gone into labor. The Committee recommended the revocation of petitioner's license.

Upon review, the Regents Review Committee recommended modification of the Committee's report. It recommended, as

had the Committee, sustaining the specifications of willfully filing a false report but found, contrary to the Committee, that the specifications of fraudulent practice and moral unfitness relating to petitioner's applications for affiliation privileges and petitioner's failure to inform patients B and D that he had no hospital admitting privileges constituted moral unfitness as well as fraudulent practice. The Regents Review Committee further modified the Committee's conclusions regarding negligence in that it determined that when patient C declined to undergo an ultrasound, petitioner was not negligent in failing to perform this examination. As to all other charges alleging negligence, its recommendation mirrored that of the Committee. In view of what it found to be petitioner's disregard for both "the truth" and "the welfare of his patients", the Regents Review Committee recommended the revocation of petitioner's license. Respondent essentially adopted the report of the Regents Review Committee and the Commissioner of Education entered an appropriate order.*

Petitioner challenges the determination as not supported by substantial evidence. Petitioner contends that no patient suffered any harm as a result of his care and that, in fact, both patients B and C delivered healthy babies.

It is well settled that in CPLR article 78 proceedings, " ' "the courts have no right to review the facts generally as to weight of evidence, beyond seeing to it that there is 'substantial evidence' " ' " *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 230, quoting Cohen and Karger, Powers of the New York Court of Appeals § 108, at 460; *see, Matter of Carrera v Sobol,* 163 AD2d 706, 708, *affd* 77 NY2d 931). As we recently determined in *Matter of Bogdan v New York State Bd. for Professional Med. Conduct* (195 AD2d 86, 88-89), the actions under review need not pose a foreseeable risk of injury to a particular patient in order to be considered negligent. The standard of care by which such conduct is judged is that of a reasonably prudent physician *(see, Matter of Loffredo v Sobol,* 195 AD2d 757). Issues of credibility and questions of fact are to be left to the Committee and respondent whose determination shall remain undisturbed where it is grounded upon substantial evidence *(Matter of Bassim v Sobol,* 178 AD2d 787,

---

* The statement of charges against petitioner were filed before July 26, 1991. Accordingly, this proceeding is governed by the rules in existence prior to the enactment of chapter 606 of the Laws of 1991 (L 1991, ch 606, § 32). The appropriate standard of review is whether the determination of guilt by a preponderance of the evidence is supported by substantial evidence *(see, Matter of Carrera v Sobol,* 163 AD2d 706, 708, *affd* 77 NY2d 931).

788, *appeal dismissed, lv denied* 79 NY2d 941; *Matter of Rojas v Sobol,* 167 AD2d 707, 709, *lv denied* 77 NY2d 806).

We conclude that the determination of respondent was supported by substantial evidence *(see, Matter of Matala v Board of Regents,* 183 AD2d 953). Petitioner's contention that his statements to patients concerning hospital privileges were not false since he had applications for privileges pending at the time are unavailing. As we noted in *Matter of Mussalli v Board of Regents* (159 AD2d 746, 747, *lv dismissed* 76 NY2d 931), a physician is not justified in relying on the approval of a pending application for affiliation privileges since there is no basis for believing that such approval is assured. Moreover, as to the charges concerning falsification of such applications, petitioner admitted that he had supplied false information and despite the exculpatory explanations proffered, the Committee determined the credibility thereof and found them to be without merit *(see, Matter of Sung Ho Kim v Board of Regents,* 172 AD2d 880, *lv denied* 78 NY2d 856; *Matter of Kleiner v Sobol,* 161 AD2d 987, *lv denied* 76 NY2d 709).

Finally, petitioner's contention that the penalty of revocation is "shockingly disproportionate to the community needs, lacks a rational basis and is unduly harsh" is similarly unavailing. As noted by the Court of Appeals in *Matter of Pell v Board of Educ.* (34 NY2d 222, 234, *supra),* a sanction is shocking to one's sense of fairness if it "is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals". Penalties need not be meted out with mathematical precision. Therefore, despite petitioner's contentions of unfairness, it is not dispositive that an agency may impose differing penalties among licensees for ostensibly similar transgressions *(see, Matter of Edelman v Sobol,* 174 AD2d 896, 898, *appeal dismissed* 78 NY2d 1006). We have further examined petitioner's remaining contentions and find them to be without merit.

Accordingly, we find that the underlying determination is supported by substantial evidence and must be confirmed.

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.