■ In the Matter of PETER M. GLASSMAN, Petitioner, v COMMISSIONER OF THE DEPARTMENT OF HEALTH OF THE STATE OF NEW YORK et al., Respondents. [617 NYS2d 413] —Crew III, J. P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

In September 1992, the Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner, an anesthesiologist, with 25 specifications of misconduct. Specifically, petitioner was charged with at least one specification of each of the following: moral unfitness to practice the profession (see, Education Law § 6530 [20]), willfully abusing a patient (see, Education Law § 6530 [31]), willfully filing a false report (see, Education Law § 6530 [21]), practicing the profession fraudulently (see, Education Law § 6530 [2]), practicing the profession with gross negligence (see, Education Law § 6530 [4]), practicing the profession with gross incompetence (see, Education Law § 6530 [6]), failing to maintain adequate patient records (see, Education Law § 6530 [32]) and having been found guilty of professional misconduct by a disciplinary agency of another State where such misconduct would, if committed in this State, constitute professional misconduct under Education Law § 6530 (9) (b). The charges stemmed from petitioner's care and treatment of patient A, statements made by petitioner on certain applications for staff positions and admitting privileges at various health care institutions and a two-year suspension of petitioner's license to practice medicine in Massachusetts.

At the conclusion of the administrative hearing that followed, at which petitioner appeared and testified, the Hearing Committee rendered a decision sustaining all 25 specifications of misconduct. As to penalty, the Committee ordered that petitioner's license to practice medicine in this State be revoked. Petitioner thereafter appealed the Committee's determination to the Administrative Review Board, which sus-

tained both the Committee's finding of guilt and the penalty imposed. This CPLR article 78 proceeding to challenge the Board's determination followed.

It is well settled that in reviewing a determination rendered by the Board, our inquiry is limited to whether such determination "was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious or was an abuse of discretion" *(Matter of Wapnick v New York State Bd. for Professional Med. Conduct,* 203 AD2d 728, 729; *see, Matter of Rudell v Commissioner of Health of State of N. Y.,* 194 AD2d 48, 50, *lv denied* 83 NY2d 754). Applying this standard to the record before us, we are of the view that the Board's determination must be confirmed.

With respect to the specifications relating to petitioner's care and treatment of patient A, the testimony offered by BPMC's medical expert plainly established that petitioner deviated from acceptable medical practice by, *inter alia,* administering certain medications to patient A in her home without adequate monitoring or resuscitative equipment available. Additionally, the testimony adduced from BPMC's expert, patient A and patient A's housemate demonstrated that petitioner not only placed patient A in a state of deep sedation without, *inter alia,* ascertaining whether patient A had consumed food or alcohol on the evening in question, but also that petitioner then left patient A, still sedated, in the care of her housemate, who had no formal medical training. Although petitioner argues on review that patient A's testimony was riddled with inconsistencies, resolution of such credibility issues lies within the province of the Committee and the Board *(see generally, Matter of Poulard v Commissioner of Health of State of N. Y.,* 202 AD2d 756, 758). As to those specifications relating to petitioner's submission of false information on various applications for hospital staff positions and admitting privileges, we note that petitioner admitted his misconduct in this regard and, further, neither the Committee nor the Board was required to accept petitioner's proffered excuse for his actions *(see, Matter of Radnay v Sobol,* 175 AD2d 432, 432-433).

Nor are we persuaded that the penalty imposed by the Board is so disproportionate to the underlying offenses as to be shocking to this Court's sense of fairness *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 233). Indeed, petitioner's pattern of making false statements on the various hospital applications would, standing alone, be sufficient to uphold the penalty of revocation *(see generally, Matter of Radnay v Sobol,*

*supra; Matter of Sung Ho Kim v Board of Regents,* 172 AD2d 880, 882, *lv denied* 78 NY2d 856). Petitioner's remaining contentions, including his assertion that he was deprived of a fair hearing, have been examined and found to be lacking in merit.

Casey, Yesawich Jr. and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.